UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Kathleen Frenette, Leslie Anne Montgomery, & Suzanne Zuckerman, <br><br> Plaintiffs, <br><br> v. <br><br> Alexion Pharmaceuticals Inc., et al., <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * Civil Action No. 1:22-cv-11042-IT <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER

September 30, 2024

TALWANI, D.J.

Before the court is Plaintiffs Kathleen Frenette, Leslie Anne Montgomery, and Suzanne Zuckerman's Motion to Compel Discovery Responses [Doc. No. 73]. For the reasons set forth herein, the Motion is GRANTED IN PART and DENIED IN PART.

I. Background

Plaintiffs Kathleen Frenette, Leslie Anne Montgomery, and Suzanne Zuckerman assert claims against Defendants Alexion Pharmaceuticals, Inc. ("Alexion") and Mary Sheila Leese for age discrimination and retaliation. Their claims are related to Alexion's restructuring, in which employees, including Plaintiffs, had to re-apply for jobs and were subsequently denied positions that they desired.

Defendants state that in September 2020, Alexion notified about 85 employees in the Patient Services group, including Plaintiffs, that their roles were being eliminated. Am. Answer [Doc. No. 13] ¶ 35. According to Defendants, Alexion encouraged these employees to apply for positions in the restructured company. Id. at 2 (response to Introduction). Per Defendants' Chart on Internal Applicants [Doc. No. 73-3], Plaintiffs applied for different roles, including several

different levels of Patient Engagement Manager ("PEM") roles, but these roles went to younger candidates. Defendants claim that for internal candidates, including Plaintiffs, Alexion based hiring decisions on each candidate's performance during a single interview, without reference to prior performance evaluations or anything in the candidate's personnel file. Am. Answer [Doc. No. 13] ¶ 43. Defendants further claim that Plaintiffs were offered level 7 Patient Navigator and Patient Liaison ("PN/PL") roles at their same base salary, but that Plaintiffs declined these roles. Id. ¶¶ 89, 115; Opposition [Doc. No. 75] at 3 n.1. Plaintiffs maintain that these positions were demotions. Compl. [Doc. No. 1-1] ¶¶ 89, 115.

Plaintiffs filed internal complaints of age discrimination on November 5, 2020, after Alexion had extended offers to internal candidates. Am. Answer [Doc. No. 13] ¶¶ 80, 88, 99. Plaintiffs allege that Defendants failed to follow Alexion's own Equal Employment, Non-Harassment and Non-Discrimination Policy ("EEO Policy"), which states: "The Company hires, assigns, promotes, and retains workers on the basis of their qualifications, relevant work performance and other legitimate factors." Compl. [Doc. No. 1-1] at ¶ 17.

In January 2021, Kate Dyson, the Compliance Business Partner for the Patient Services Organization, proposed that Alexion create form statements for each candidate who had been selected in October 2020 for the PEM roles. See January 2021 Email re PEM Employment Statement [Doc. No. 73-7] at 4-6. These are the Health Care Professional statements ("HCP statements") referred to throughout this Memorandum and Order. An HCP statement was allegedly placed into the file of the eleven candidates selected for PEM roles. Defendants acknowledge that these statements were only created and put into the successful candidates' files several months after the initial hiring process concluded in October 2020. See Opposition [Doc. No. 75] at 8.

## II. Procedural Background Related to the Discovery Dispute

On November 3, 2022, Plaintiffs issued their first set of Requests for Production of Documents [Doc. No. 75-3], including requests 33, 41, 60, 61, 82 and 86 discussed below. Defendants served their response on January 13, 2023, setting forth objections and identifying those documents that Alexion agreed to produce. See Alexion's Response to Plaintiffs' Initial Request for Product of Documents [Doc. No. 74-5].

In February 2023, this court extended the deadline to request production of documents to March 28, 2023, from the previous deadline of November 4, 2022. See Joint Motion to Amend Scheduling Order by Consent [Doc. No. 19] at 2. Plaintiffs did not serve a further request for production of documents during this time.

In November 2023, Plaintiffs' counsel sent a letter advising Defendants' counsel that Plaintiffs intended to move to compel certain information and seeking a discovery conference to determine if a motion was necessary. See November 3, 2023 Letter from Elizabeth Rodgers to Plaintiffs' Counsel [Doc. No. 75-5] at 2. In that letter, Plaintiffs made no reference to the specific requests for production at issue, but outlined specific information and documents Plaintiffs sought, including "the dates of employment, salary, full compensation (base, bonuses, 401k match, RSUs, etc.) through the present for all individuals who have held: (a) all 20 PEM positions, (b) the Senior Manager, Patient Engagement position, and (c) the Associate Director, Patient Services Training and Development position." Id.

On January 12, 2024, Defendants replied to Plaintiffs' November 2023 request. See Response to Plaintiffs' November 22, 2023 Correspondence [Doc. No. 74-6] at 1. Defendants refused to provide documents concerning candidates for PEM roles Plaintiffs did not apply for, documents for candidates for roles like the Associate Director and Patient Services Training and Development roles because these roles fell outside of the restructured Patient Services

Organization, or any information about any successful candidates' actual bonuses and RSU distributions but agreed to provide these candidates' bonus targets and company multipliers for 2021. Id.

Plaintiffs and Defendants engaged in further exchanges concerning these requests in January 2024. Defendants' counsel memorialized Plaintiffs' specific requests for continued salary information, actual bonuses, 401k matches, and restricted stock units (RSUs), as well as Plaintiffs' arguments as to why these materials were relevant, in a January 18, 2024 email. See January 18, 2024 Email from Emily Miller to Elizabeth Rodgers [Doc. No. 74-7] at 3-4.

Discovery closed on January 26, 2024—after this court granted a joint motion to extend the end of fact discovery by ten days. See Elec. Order [Doc. No. 58]. On that same day, both parties supplied their final discovery positions. Defendants again stated in their communication that they would not produce continued salary information, actual bonus information, or actual equity information. See January 26, 2024 Email from Lynn A. Kappelman to Elizabeth Rodgers [Doc. No. 74-8] at 2.

In a January 30, 2024 email from Defendants' counsel to counsel for Plaintiffs, Defendants alleged that counsel for the parties conferred and agreed to supply each other with narrowed requests in writing regarding discovery issues still in dispute, but that Plaintiffs were repeatedly late in supplying these narrowed requests. See January 30, 2024 Email from Emily Miller to Elizabeth Rodgers [Doc. No. 74-10] at 2. Plaintiffs contend that Plaintiffs' counsel never agreed to narrow their requests. See Motion to Compel [Doc. No. 73] at 10-11.

Plaintiffs filed the present Motion to Compel [Doc. No. 73] on February 14, 2024. Both sides seek attorneys' fees in connection with this motion. See id. at 24; Opposition [Doc. No. 75] at 12.

### III.   Standard of Review

Under Federal Rule of Civil Procedure 37(a)(3)(B), a party seeking discovery may move for an order compelling production when another party has failed to produce documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv).

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). However, the court has "broad discretion to manage discovery matters," Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003), and "must limit the frequency or extent of discovery . . . if it determines," among other things, "that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[,]" Fed. R. Civ. P. 26(b)(2)(C).

### IV.   Discussion

Plaintiffs seek to compel the production of two categories of materials.

#### A.   *Request for Statements Related to Hiring of HCPs as PEMs*

Plaintiffs seek to compel "all statements, believed to be at least eleven in total, created and kept on file by Alexion that Health Care Professionals that were hired as PEMs were hired based on objective criteria" (the "HCP statements"), and "all documents that contain attestations that Alexion create and keep on file [such statements]" (the "attestations"). [Doc. No. 73] at 13. This court GRANTS Plaintiffs' Motion to Compel as to the HCP statements and DENIES the request as to the attestations.

1. The HCP Statements

    a. The Timing of the Request

Defendants maintain that Plaintiffs did not request the HCP statements until the November 3, 2023 meet and confer letter and that the request is therefore untimely. See Opposition [Doc. No. 75] at 3. However, although Plaintiffs did not specifically identify the HCP statements, Plaintiffs' initial request for production of documents, sent on November 3, 2022, included more general requests that encompassed the HCP statements.[1] For example, Request number 61 sought all documents "pertaining to any review, audit or analysis of the restructuring to ensure compliance with Alexion EEO policies." Plaintiff's Initial Request for Production of Documents [Doc. No. 75-3] at 19. Given that Kate Dyson, the Compliance Business Partner for the Patient Services Organization, apparently proposed including the HCP statements into the files of the successful candidates, the HCP statements pertain to an effort to "ensure compliance" with Alexion's internal EEO policies. See January 2021 Email re PEM Employment Statement [Doc. No. 73-7] at 1.[2]

---

[1] See Plaintiffs' Initial Request for Production of Documents [Doc. No. 75-3] at 15, Request No. 41 (seeking "[a]ny documents concerning . . . the outcome of the interview including the evaluation and selection of the successful candidate . . . [and] discussion of any qualifications"); Id. at 18, Request No. 50 (seeking "[a]ll documents concerning documents provided to interviewers to assess talent and business needs for particular expertise or talent or definition of the right people in place for business success"); Id. at 19, Request No. 56 (seeking "[a]ll documents evidencing how Alexion defined the business need for prior skills and job experience in its selection for the PEM open positions."); Id. at 19, Request No. 60 (seeking "[a]ll documents pertaining to the application of Alexion's EEO policy to the restructuring procedures and practices . . . ."); Id. at 19, Request No. 61.

[2] Defendants insist that Plaintiffs' earlier requests did not cover the HCP statements because the statements were not used during the hiring process and instead were created several months after. See Opposition [Doc. No. 75] at 8. Regardless of whether the HCP statements were created or used during the hiring process, the statements still fall within Plaintiffs' initial requests for documents.

In sum, Plaintiffs' request falls within the initial requests for production of documents and was therefore timely.

        b.      The Relevance of the Request

Defendants state that the HCP statements are irrelevant to Plaintiffs' claims and Defendants' possible defenses. Defendants' position is that these statements "had nothing to do with the hiring process" because Alexion did not create or file the statements until months after the initial hiring process. See Opposition [Doc. No. 75] at 9. Although Plaintiffs' relevance arguments are less clear than they could be, the court finds that the statements are relevant.

Plaintiffs contend that "the discrepancy between the compliance the Defendants claimed to have made with their EEO policy in the Health Care Professionals statements and the reality of noncompliance is relevant to credibility and pretext." Motion to Compel [Doc. No. 73] at 17-18. Essentially, Plaintiffs allege that filing the HCP statements for the successful candidates was a cover-up operation. "[B]y only relying on individuals' interviews in selecting candidates for the PEM roles," Plaintiffs allege, "the Defendants employed a hiring procedure that entirely violated their EEO policy— despite claiming to have followed it in their Health Care Professionals statements." Id. at 17 (emphasis added). On this view, the creation and filing of the HCP statements after the initial hiring process does not make the statements irrelevant as Defendants claim. The late creation is the point. Plaintiffs have sufficiently shown for discovery purposes that the HCP statements are relevant to their argument that Defendants engaged in a retroactive compliance procedure inconsistent with the actual hiring process.

Plaintiffs have also sufficiently shown, for discovery purposes, that the HCP statements are relevant to showing that the EEO policy was an established hiring policy at the company.[3] The EEO policy allegedly required the company to "hire[], assign[], promote[], and retain[] workers on the basis of their qualifications, relevant work performance and other legitimate factors." Compl. [Doc. No. 1-1] ¶ 17. Plaintiffs contend that Defendants violated the EEO policy, Compl. [Doc. No. 1-1] ¶ 56, because, as Defendants admit, the company "made its hiring decisions based solely on interview performance without reference to prior performance evaluations or anything else in the personnel file." Am. Answer [Doc. No. 13] ¶ 43. A "'failure to follow established procedures or criteria' . . . [may] support a reasonable inference of intentional discrimination." Downey v. Johnson, 104 Mass. App. Ct. 361, 379 (2024) (quoting Bulwer v. Mount Auburn Hospital, 473 Mass. 672, 687 (2016)). See also Theidon v. Harvard University, 948 F.3d 477, 499 (1st Cir. 2020) (quoting Rodríguez-Cardi v. MMM Holdings, Inc., 936 F.3d 40, 50 (1st Cir. 2019)) ("[e]vidence that [an employer] 'deviated from its standard procedure or policies in taking an adverse employment action against [a plaintiff] may be relevant to the pretext inquiry.'"). For discovery purposes, the HCP statements, which allegedly stated that "Alexion enters the employment or business relationship based on the . . . healthcare professionals' objective merits and qualifications," see January 2021 Email re PEM Employment Statement [Doc. No. 73-7] at 6, are relevant to Plaintiffs' claim that the EEO policy was an established hiring procedure—one that the company deviated from in this case.

---

[3] In Plaintiffs' words, the HCP statements "demonstrate that the Defendants' EEO policy was . . . viable and in place at the time of hiring of the PEM role." Motion to Compel [Doc. No. 73] at 17.

        c.        Whether Discovery of the Relevant Documents Should Be Limited

Defendants make no argument about the proportionality of Plaintiffs' request for the HCP statements. Based on the information before this court, it is hard to see why producing these statements would be burdensome or expensive.

Defendants do object to Plaintiffs' request for the HCP statements as unreasonably duplicative. See Opposition [Doc. No. 75] at 8. Defendants note that Plaintiffs already have the information Plaintiffs expect to be in the statement, which includes the name and degree of the selected applicant and a statement that "Alexion enters the employment or business relationship based on the . . . healthcare professionals' objective merits and qualifications." See January 2021 Email re PEM Employment Statement [Doc. No. 73-7] at 1, 6. But Plaintiffs are not entitled just to information, but also to the underlying documents, where the fact that separate documents were prepared and placed in individual files appears to be relevant here.

Therefore, Plaintiffs Motion to Compel is GRANTED as to the HCP statements.

    2.   The Attestations

In addition to the HCP statements, Plaintiffs seek "all documents that contain attestations that Alexion create and keep on file [such statements]." [Doc. No. 73] at 13. Defendants state that they have "no idea what documents Plaintiffs are trying to reference" with this request. See Opposition [Doc. No. 75] at 9.

The term "attestation" appears nowhere in Plaintiffs' requests for production, see Plaintiffs' Initial Request for Production of Documents [Doc. No. 75-3], the November 3, 2023 Letter from Elizabeth Rodgers to Plaintiffs' Counsel [Doc. No. 75-5], or in Plaintiffs' letter regarding the close of fact discovery, see Letter Regarding Close of Fact Discovery [Doc. No. 74-9] at 12 (requesting "[e]ach statement for each PEM who is also an HCP referenced in

Dyson's deposition and the criteria on which the statement was based."). Plaintiffs also did not seek leave from this court to file a reply explaining their request for "attestations."

On this record, the court is unsure of what Plaintiffs are seeking and is also unable to find that Plaintiffs complied with their meet and confer obligations under Local Rule 37 where Defendants do not know what is being sought. Accordingly, Plaintiffs' request for "attestations" is DENIED.

      B.      *Request for Documents Concerning Actual Compensation*

Plaintiffs seek documents[4] "concerning the actual compensation paid or otherwise awarded by Alexion to the individuals selected into the nine roles for which the Plaintiffs applied and interviewed, as well as subsequent employees who have since held those same positions." See Motion to Compel [Doc. No. 73] at 18.[5] Specifically, Plaintiffs seek documents concerning: (1) the actual compensation paid or awarded to all individuals that have been hired into or have held each Grade 9 or higher role (PEM, PEM Lead, and Senior Manager of Patient Engagement) from October 30, 2020 to present; and (2) the range of compensation paid or awarded to all individuals that have been hired into or have held each Grade 7 or lower role (the PN/PL positions offered to Plaintiffs) from January 1, 2021 to present. Id. This court GRANTS Plaintiffs' Motion to Compel as to this information, subject to a protective order.[6]

---

[4] Despite references in Plaintiffs' motion to compelling "information," the motion concludes with a request for an order compelling the production of documents. See Motion to Compel [Doc. No. 73] at 20.

[5] Defendants do not claim that Plaintiffs failed to include a request for compensation documents in their original requests for production.

[6] Defendants note that Plaintiffs' counsel has twice filed confidential information on the public docket, including non-party salary information, see Opposition [Doc. No. 75] at 2; Feb. 3, 2024 Emails [Doc. No. 75-1]; Feb. 14, 2024 Email [Doc. No. 75-2].

Plaintiffs' request is relevant and proportional, even given the privacy interests at stake.[7] Defendants argue that ongoing compensation information is irrelevant because such compensation is based on individual employee performance. See Opposition [Doc. No. 75] at 10-11. Compensation is, to a degree, an individual issue. But the actual compensation information for the successful candidates has bearing on the possible compensation for the position. These actual numbers may be especially helpful when evaluated alongside "[Plaintiffs'] own actual historical compensation information" and historical performance metrics. Id. at 11. Finally, the actual compensation information is necessary for determining whether employees were, in fact, compensated according to the starting corporate multipliers and bonus targets, or if these were only projected figures and subject to change.

Defendants also argue that Plaintiffs are not entitled to back pay, and hence to information needed to calculate back pay, because "each rejected Alexion's offer of continued employment in a PN/PL role at her exact same salary." See Opposition [Doc. No. 75] at 10 (citing Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 232 (1982). In Ford Motor Co., the Court held that although a Title VII claimant "need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied." 458 U.S. at 231-32. That means "an employer charged with unlawful discrimination often can toll the accrual of backpay liability by unconditionally

---

[7] "When a party seeks to discover information that implicates the privacy concerns of non-parties, the court . . . balances Fed. R. Civ. P. 26(b)(1), which allows discovery relating to any relevant, non-privileged information, and broader discovery upon a showing of good cause, against the privacy interests of nonparties to the dispute." Equal Employment Opportunity Commission v. Baystate Medical Center, Inc., No. 3:16-CV-30086-MGM, 2017 WL 4883453, at *3 (D. Mass. Oct. 30, 2017).

offering the claimant the job he sought, and thereby providing him with an opportunity to minimize damages." Id. at 232.[8]

But Plaintiffs' argument is that "the PN/PL positions . . . were *not* comparable to the Plaintiffs' prior [] roles" or to the PEM positions that Plaintiffs sought. See Opposition [Doc. No. 73] at 22-23. Ongoing compensation information is relevant to determining whether the PN/PL role was a demotion and was inferior to the roles that Plaintiffs sought. See Compl. [Doc. No. 1-1] ¶¶ 89, 115, 120, 122. It is also relevant to the mitigation-of-damages defense that Defendants suggests that they will raise. This defense, if considered, would make it necessary to compare the ongoing compensation of PN/PL roles to the compensation for the roles that Plaintiffs sought.

The compensation information is thus relevant to Plaintiffs' claims and Defendants' likely defenses. However, because divulging compensation information raises privacy concerns, both for Alexion and its employees, this information shall be produced subject to a Protective Order.

    C.    *Attorney's Fees*

Plaintiffs seek attorney's fees related to the litigation of the present Motion to Compel. This court DENIES the request for attorney's fees.

Federal Rule of Civil Procedure 37(a)(5)(A) provides that if a motion to compel disclosure "is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, "the court must not order this

---

[8] The rule of Ford Motor Company also applies to claims of discrimination under the Commonwealth's Chapter 151B, see Brady v. Nestor, 398 Mass. 184, 188 (1986).

payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

As the extensive history of discovery in this case shows, the parties engaged in a good faith effort to resolve this discovery dispute before Plaintiffs filed their motion. See supra Part II. As to both the HCP statements and the Compensation documents, Defendants nondisclosure was "substantially justified," meaning "justified to a degree that could satisfy a reasonable person.'" Sheppard v. River Valley Fitness One, L.P., 428 F.3d 1, 12 (1st Cir. 2005) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). As for the "attestations," Defendants were reasonable in not producing documents in response to that request because it is unclear what "attestations" refers to here. See Opposition [Doc. No. 75] at 9.

Therefore, Plaintiffs' request for attorney's fees is DENIED.

## V.     Conclusion

For the foregoing reasons, Plaintiffs' Motion to Compel is GRANTED IN PART and DENIED IN PART. No later than October 15, 2024, Defendants shall produce subject to a Protective Order:

(1) all statements placed in the files of employees who have been selected for the role of PEM stating that Alexion enters into the business or employment relationship based on the employees' objective merits and qualifications, or words to that effect;

(2) as to the eight Grade 9 or higher roles (i.e., the PEM, PEM Lead, and Senior Manager of Patient Engagement positions), the actual compensation paid or awarded to all individuals that have been hired into or have held each role from October 30, 2020 to present, including all components of compensation (salaries; merit increases;

      corporate multipliers; equity of any kind, including stock options or other incentive pay; sign-on bonuses or other lump sum payments; and benefits of any kind);

(3) as to the PN/PL positions offered to the Plaintiffs, the range of compensation paid or awarded to all individuals that have been hired into or have held each role from January 1, 2021 to present, including the range of base salaries; merit increases, if any; corporate multipliers, if any; any opportunities for individuals holding said roles to receive stock in any form; and benefits of any kind.

The parties shall promptly submit a proposed Protective Order for the court's review. The requests for attorneys' fees are DENIED.

    IT IS SO ORDERED.

September 30, 2024                    /s/ Indira Talwani
                                            United States District Judge